UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NICHOLAS GARCIA,

        Petitioner,             Criminal Case Number 92-20103
                                              Civil Case Number 10-11004
v.                                              Honorable David M. Lawson

UNITED STATES OF AMERICA,

        Respondent.
_____/

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

This case has a long and storied history. Petitioner Nicholas Garcia was convicted at trial — twice — of conspiracy to distribute over 1,000 kilograms of marijuana. The grand jury charged that the conspiracy was active from approximately September 1992 until approximately December 2, 1992, shortly before the first indictment was returned. Nine defendants originally were charged. Five went to trial in 1994, at which time one was acquitted. Petitioner Garcia was among the convicted, and he was sentenced to life in prison. The convictions were reversed on appeal. The other defendants resolved their cases, and Mr. Garcia opted for a retrial, which, after multiple motion hearings, lawyer substitutions, and another round of appeals, occurred in May 2003. Garcia was convicted again and sentenced to 30 years in prison. His conviction was affirmed on appeal, but his case was remanded for resentencing because of the intervening decision in *Booker v. United States*, 543 U.S. 220 (2005). Garcia was resentenced to 336 months in prison.

Now before the Court is the petitioner's motion to vacate the sentence filed under 28 U.S.C. § 2255, in which he alleges that he received ineffective assistance of counsel from some or all of the seven lawyers who represented him over the past several years. It appears that the petitioner has identified ten instances of deficient performance: seven occurred before trial; two during trial; and

one overarching error in the alleged failure to explore a plea agreement. The petitioner also has filed a motion to appoint counsel and for an evidentiary hearing. The Court concludes that the petitioner is not entitled to counsel and one need not be appointed, and no hearing is necessary because the record is fully developed, and it demonstrates that the petitioner's Sixth Amendment rights were fully vindicated. The petitioner's claims of pretrial mistakes amount to a catalog of issues he says his lawyers should have pursued. However, the issues identified either were decided against the petitioner or were so frivolous that they were not worth pursuing. There was no deficient performance there. The alleged trial mistakes are belied by trial counsel's affidavit and the trial record. And the claim that defense counsel failed to pursue plea negotiations on Mr. Garcia's behalf is just plain false. The petitioner is not entitled to relief under section 2255. His motion will be denied.

I.

The original indictment in this case was returned on December 9, 1992. That indictment charged nine defendants with conspiracy with intent to distribute and distribution of marijuana. It alleged that the conspiracy existed from approximately November 1992 through December 1992.

The first superseding indictment was returned on March 24, 1993. It was identical to the original indictment with the exception of the starting date of the conspiracy. Rather than November 1992, the superseding indictment alleged that the conspiracy existed from September 1992 through December 1992. The defendant was tried and convicted by jury on that indictment along with three codefendants (one defendant was acquitted). As mentioned earlier, the judge assigned to the case at the time, Judge Robert H. Cleland, sentenced the petitioner to life in prison, which was mandated by the judge-made finding that the petitioner was accountable for over 1,000 kilograms of marijuana

and had a prior felony drug conviction that enhanced his sentence under 21 U.S.C. § 841(b)(1)(A). However, the court of appeals reversed the convictions, holding that the jury selection plan under which the defendants were indicted was constitutionally flawed and violated the Jury Selection Act. *United States v. Ovalle*, 136 F.3d 1092, 1109 (6th Cir. 1998).

The case was reopened on May 4, 1998 and the government sought and received from the grand jury a second superseding indictment. That indictment mimicked the first superseding indictment, except that some codefendants' names were removed because their cases had been resolved. There was no arraignment at that time.

On May 13, 1998, a third superseding indictment was filed; it differed from the previous indictments in two key ways. It expanded the time frame of the conspiracy by several years, and it expanded the conspiracy to include cocaine and heroin. The defendant filed a motion to dismiss and a supplemental motion to dismiss. This Court's predecessor, Judge Victoria A. Roberts, granted the supplemental motion to dismiss and dismissed the third superseding indictment on February 25, 2000. In response to the dismissal, the government arraigned the defendant on the second superseding indictment issued in 1998.

Then, on August 23, 2000, a fourth superseding indictment was filed. It resembled the second superseding indictment with the following pertinent variations: (1) the fourth superseding indictment contained a reference to "21 U.S.C. 841(b)(1)(A)(vii)," and charged that the defendants possessed, intended to distribute, and did distribute quantities totaling 1,000 kilograms or more of marijuana; and (2) the fourth superseding indictment contained a reference to the defendants' prior felony drug convictions.

The fourth superseding indictment was sought in order to address some deficiencies that may have existed in the second superseding indictment in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In fact, following *Apprendi*, drug quantities that increased the maximum sentence were considered elements of the crimes that must be charged by the grand jury, not mere sentencing factors. *See United States v. Strayhorn*, 250 F.3d 462, 469-70 (6th Cir. 2001).

This Court dismissed the fourth superseding indictment on the ground that it expanded the charges and thus did not relate back to the date of the second superseding indictment; therefore, it was returned beyond the five-year period of limitations. However, the Sixth Circuit reversed that decision. *United States v. Garcia*, 268 F.3d 407 (6th Cir. 2001). The court held that the government had provided notice that it intended to hold the defendants accountable for the stated drug quantities, and the government had filed penalty enhancement informations before the first trial that detailed the defendants' prior convictions. Therefore, the defendants had notice of the charges that were formalized in the fourth superseding indictment. Garcia petitioned the Supreme Court for certiorari, which was denied, and the case made its way back to the district court on June 4, 2002.

While all of these developments were playing out, the remaining three codefendants pleaded guilty. The petitioner through his attorneys continued to file motions, including motions to suppress evidence obtained during the search of his house in Texas and motions to dismiss because of alleged speedy trial violations. Throughout the proceedings, the petitioner changed attorneys on a number of occasions. William Brisbois and Alan Brown represented him in 1992 for a short time. Then David Thomas appeared in the case and represented the petitioner through the first trial and appeal. After the first remand, Garcia was represented in turn by George C. Bush, Kenneth R. Sasse, and

David S. Steingold. David Thomas returned to represent Garcia on the government's appeal to the Sixth Circuit from this Court's order dismissing the fourth superseding indictment. David Steingold continued to represent Garcia in the district court until Barbara Klimaszewski was appointed to replace him in April 2002. Garcia again sought new counsel or permission to proceed *pro se*, and Robert J. Dunn was appointed to represent him.

Garcia continued to file motions through the summer and fall of 2002. He also was engaged in plea negotiations through his lawyer, Robert Dunn, during that time. The Court worked its way through the motions and brought the case to trial for the second time on May 1, 2003. The jury returned its guilty verdict on May 13, 2003, convicting the petitioner of conspiracy to distribute more than 1,000 kilograms of marijuana. On September 3, 2003, this Court sentenced Garcia to a prison term of 360 months.

Garcia then appealed to the Sixth Circuit; Martin J. Beres and later David Thomas represented Garcia on this third appeal. Garcia raised the following issues on appeal: (1) the district court erred in denying the motion to suppress evidence found on his person and in the vehicle in which he was riding; (2) the district court erred in denying the motion to suppress evidence discovered during a search of his residence; (3) a prior Sixth Circuit panel erred in upholding the timeliness of the fourth superseding indictment issued against him; and (4) his case should be remanded for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). The Sixth Circuit affirmed Garcia's conviction and remanded the case for resentencing. *United States v. Garcia*, 496 F.3d 495 (6th Cir. 2007). On remand, this Court again appointed Mr. Dunn to represent Garcia and sentenced Garcia below the guideline range to 336 months in prison. Garcia instructed Mr. Dunn to appeal that sentence, which he did. Mr. Dunn filed an *Anders* brief, and Garcia filed

a response. The Sixth Circuit concluded that Garcia's sentence was procedurally and substantively reasonable and affirmed it on December 11, 2008. *United States v. Garcia*, Case No. 08-1028, (6th Cir. Dec. 11, 2008).

The mandate was returned from the court of appeals on February 5, 2009. Garcia filed his motion under 28 U.S.C. § 2255 on March 11, 2010, along with a motion to hold the case in abeyance. The petitioner filed a brief and then an amended brief. The government responded to the motion, and the petitioner filed a reply. On May 27, 2011, the petitioner filed a motion for an evidentiary hearing.

II.

A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceed the maximum penalty allowed by law, or "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). Claims of ineffective assistance of counsel are properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 421-22 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997).

The petitioner has set out ten instances in which his lawyers let him down. Before trial, he says that they:

> 1. Failed to argue that the fourth superseding indictment was barred by judicial estoppel.

    2. Failed to argue that the fourth superseding indictment was obtained in violation of the statutory right to a timely indictment because it was not returned within 30 days of the defendant's being detained on a complaint.
    3. Failed to move for dismissal for violation of the Speedy Trial Act.
    4. Failed to move for dismissal for violation of the constitutional right to a speedy trial.
    5. Failed to argue that the prosecution was barred by double jeopardy.
    6. Failed to argue that the government had only 60 days to return a new indictment under 18 U.S.C. § 3288.
    7. Failed to investigate properly and argue that the defendant's Fourth Amendment rights were violated.

During trial, his lawyers allegedly:

    1. Failed to prepare for trial properly
    2. Failed to challenge the government's mischaracterization of the evidence and witness vouching

And finally, Garcia criticizes his last lawyer, Robert Dunn, for failing to explore the possibility of a plea bargain despite Garcia's purported willingness to plead guilty and his insistence that Mr. Dunn negotiate with the government.

    Of course, Garcia is prevented from raising the legal issues that underlie each of these claims of defective performance. They were not raised earlier by any of his seven lawyers during any of his four previous appeals, and the time to raise them has expired. A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (reaffirming that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process"). In *United States v. Frady*, 456 U.S. 152 (1982), the Supreme Court observed:

    Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as

> here, he already has had a fair opportunity to present his federal claims in a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal.

*Frady*, 456 U.S. at 164-65; *accord Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (stating that "respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal"). Where a defendant fails to assert claims on direct appeal and attempts to raise them in a § 2255 motion, "he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528.

However, a claim that "cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness

under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. "A failure to investigate, participate in, and prepare for the sentencing proceedings fails to satisfy an objective standard of reasonable representation and therefore falls below Sixth Amendment standards for effective assistance of counsel." *Arredondo v. United States*, 178 F.3d 778, 788 (6th Cir. 1999).

Addressing Garcia's complaints about the pretrial performance of his lawyers, it is useful to focus on the merits of the underlying legal issues, which he says none of his lawyers raised. Because "there can be no constitutional deficiency in . . . counsel's failure to raise meritless issues," *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir.1999), the Court must examine the merits of those issues to determine if trial counsel's performance was deficient by not raising them in the first instance.

The first point missed by attorneys David Thomas, Kenneth Sasse, David Steingold and Robert Dunn was that the fourth superseding indictment had to be dismissed under the doctrine of judicial estoppel. Garcia reasons that the government took inconsistent positions in the first trial and the second trial, since the government never charged drug quantities at the outset, but ultimately

included them. Garcia believes that the government's duplicity should have been obvious to his lawyers, and if they would have raised the issue, he would only be facing the second superseding indictment, which did not charge drug quantities and would expose him only to a five-year sentence.

Garcia is incorrect. "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990). The doctrine has no application here because the government never took a position contrary to the one asserted at the retrial. As noted earlier, the government sought the fourth superseding indictment in order to comply with a change in the law introduced by *Apprendi v. New Jersey*, requiring the indictment to include *all* the elements of the drug offense, meaning the drug types and quantities. *See Strayhorn*, 250 F.2d at 469-70. From a factual standpoint, however, there was nothing new. In fact, the Sixth Circuit reversed this Court's dismissal of the fourth superseding indictment on the bases that the defendants all had notice of the penalty exposure from the start, and the latest indictment added nothing new, so it related back to a time before the statute of limitations had expired. *Garcia*, 268 F.3d at 414-15. It was a change in the law, not a change in the government's theory of prosecution, that necessitated the changes in the indictment. *Id.* at 412-16. Garcia's lawyers presumably recognized that and reasonably declined to advance the argument.

Garcia's points two, three, four, and six all relate to the timeliness of his indictment and trial. The Court addressed the speedy trial issues under the Constitution and the Speedy Trial Act in an opinion delivered from the bench on January 3, 2003. Garcia contends that attorneys Thomas,

Sasse, Steingold, and Dunn missed a few arguments. One is that the fourth superseding indictment was not returned within thirty days of the petitioner's detention on a complaint. The Speedy Trial Act requires that an indictment be returned within thirty days of a detainee's arrest. 18 U.S.C. § 3161(b). The record shows that the petitioner was detained on December 4, 1992 on a complaint issued by a magistrate judge, and the grand jury returned an indictment on December 10, 1992. Section 3161(b) was satisfied. But the petitioner argues that the indictment was determined to be unconstitutional in *United States v. Ovalle*, and therefore, he reasons, he was being held on a complaint after the court of appeals remanded the case on March 9, 1998. A new indictment — the second superseding indictment — was not returned by the new grand jury until May 6, 1998, which was outside the thirty-day period.

The premise of the petitioner's argument is that when the Sixth Circuit found this district's jury selection plan unconstitutional, the previous indictment became void. Nothing in *Ovalle* suggests that conclusion. In fact, the court in that case reversed the *convictions* and remanded the cases for further proceedings. *Ovalle*, 136 F.3d at 1109. Under those circumstances, the more specific provisions of the Speedy Trial Act govern. *See* 18 U.S.C. § 6161(2)(e) (stating that "[i]f the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final . . ."). Those issues related to the Speedy Trial Act were thoroughly litigated by the petitioner's lawyers. And even if there were any merit to the idea that the second superseding indictment was returned late, the factors listed in the Speedy Trial Act — "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice," 18 U.S.C. § 3162(a)(2) —

overwhelmingly would have favored dismissal without prejudice. There is no merit to the petitioner's argument that his attorneys should have raised the claim before the second trial.

The petitioner's other arguments relating to timeliness also fail to persuade. The petitioner's Speedy Trial Act and constitutional speedy trial issues were raised by several attorneys and addressed by two different judges. The last of those occurred when this Court delivered an opinion from the bench on January 29, 2003:

> The court has been over this case several times, including issues relating to the Speedy Trial Act and the Sixth Amendment.
>
> On August 22, Judge Roberts filed a lengthy opinion and order dealing with a speedy trial motion and denied it, finding no violation of the Speedy Trial Act or any constitutional violation. And Judge Roberts' opinion analyzing the law under the Speedy Trial Act, I find to be very well put together and I adopt the analysis of the law.
>
> With respect to her determination of the facts covering the period from May 4 of 1998, when the court of appeals mandate issued following the reversal of the conviction, through the date of Judge Roberts' opinion, she obviously included that — as Mr. Dunn called it — lost period in 1999 and dealt with that question.
>
> I was asked by Mr. Steingold, one of Mr. Garcia's previous lawyers, to revisit that issue when an omnibus motion, so called, was filed. That was docket number 764. And that omnibus motion was filed along with a motion to dismiss the fourth superseding indictment. This court entered an order on October 25 of 2000 which denied the omnibus motion and adopted Judge Roberts' August 22, 2000 opinion and order denying defendant's motion to dismiss for Speedy Trial Act and constitutional violations. I see no reason to depart from that ruling at this time.
>
> Taking a look at the period under scrutiny, the record indicated that between January and December of 1999, there were 14 defense motions filed in the case. Thirteen of them by defendant Garcia, and then there was an additional oral motion reflected on the May 21, 1999 docket entry relating to, I believe, reopening the detention hearing. Judge Roberts thoroughly dealt with those in her opinion.
>
> In addition, between January of 1999 and February of 2000, there was significant activity involved in the case concerning identifying counsel for Mr. Garcia. David Thomas, the initial attorney, moved to withdraw and that motion was granted. Attorney George C. Bush was appointed, apparently that didn't work out. And Mr.

-12-

Sasse, Kenneth R. Sasse, of the Federal Defender's Office was appointed to represent him, to represent Mr. Garcia.

There was a stipulation, as reflected in record items 654 and 656, that certain amounts of the delay during that period of time was excludable. The court is satisfied that there is no Speedy Trial Act violation, at least through . . . August 22 of 2000. Since that time, the court had entered an order in October, on October 12, 2000, determining excludable delay, and then shortly thereafter dismissed the fourth superseding indictment which had been filed on August 23, 2000.

The case then went to appeal and an interlocutory appeal was filed by the government on November 9 of 2000. The court of appeals reversed this court's decision and the mandate was issued returning the case to this court on January 28 of 2002. A certiorari petition was filed on April 15 and the Supreme Court denied certiorari on June 4.

The defendant then filed a motion to appoint counsel on June 6, and also a motion for bond on June 11. The order denying . . . the motion for bond was filed on June 24, and on June 28 another order determining excludable delay was filed.

On August 2 of this year, a motion to dismiss for speedy trial was filed. There was a motion for discovery also filed. Mr. Dunn around that time was appointed to represent the defendant. Before then the court had asked attorney Barbara Klimaszewski to review the matter, and that apparently did not result in a relationship that was memorialized by an order. On August 21 there was a motion to quash the arrest; a motion to suppress the evidence was filed. Those motions remain pending. . . .

Because of the pendency of those motions, based upon the law as set forth by Judge Roberts with respect to the Speedy Trial Act, that is, the law set forth in the August 22, 2000 opinion which the court adopts and incorporates here, the court finds that there is no Speedy Trial Act violation, even through the current date. And, in fact, the time continues to be excludable under the statute because of the pendency of those motions, and pendency of this motion. That is the speedy trial motion.

With respect to the constitutional question, the Sixth Amendment does guarantee an accused person the right to a speedy and public trial. In the *Barker* case that Mr. Dunn referred to earlier, the court set forth four factors for courts to . . . to consider in determining whether a constitutional violation has occurred: The first is the length of the delay, the second is the reason for the delay, the third is the defendant's timely assertion of his rights, and the fourth is prejudice to the defendant.

With respect to the length of the delay, looking from the date that the mandate was returned from the court of appeals in 1998 through now, there is a considerable

-13-

period of delay. However, Judge Roberts accounted for that delay and found no constitutional violation at least through November of 2000.

The great majority of the delay from that time until now was consumed by the activities in the court of appeals concerning this court's dismissal of the fourth superseding indictment. And the delay from January of 2002 until now, January of 2003, has been occasioned primarily by disputes that had arisen between Mr. Garcia and his attorney, the appointment of present counsel, additional time requested by Mr. Dunn, reasonably so, to review a voluminous record — and a very complicated record — and also delay about this court's adjudication of the pending motions, defense motions, I would add.

The defendant has asserted his right to a speedy trial on a timely and consistent basis, and the court so finds. However, with respect to the question of prejudice, there really has been no demonstration of prejudice that results from an inability and hindrance of the defendant's ability to present his case. For example, deceased or unavailable witness and so forth. In *Barker*, however, the court identified two other areas of prejudice, three in total, that the court must consider. One is the oppressive pretrial incarceration of the defendant, and also anxiety and concern of the accused in awaiting final adjudication of his claim.

If this case came to the court as a fresh matter, that is one in which there was no previous conviction and life sentence, I would suggest that those two factors might carry the day, or at least carry considerably more weight than they do with the matter coming to the court in the present posture.

The court does not find that the defendant was unfairly prejudiced by the delay . . . for reasons which the court previously outlined. The court finds, therefore, there has been no violation of the Speedy Trial Act, nor has there been a violation of the Sixth Amendment. And for these reasons previously outlined on this record, the court will deny the motion to dismiss.

R. 1030, Tr. at 12-17.

None of the artifacts that the petitioner attempts to pick from between the Court's prior rulings would have justified additional attention from his lawyers. Their reluctance to raise those issues does not implicate the Sixth Amendment.

Garcia also says that his retrial was foreclosed by the Double Jeopardy Clause. His lawyers' failure to raise that claim can be explained by *Ball v. United States*, 163 U.S. 662, 672 (1896), in

which the Supreme Court explained that "a defendant who procures a judgment against him upon an indictment to be set aside may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted." Deficient performance is not usually found in a lawyer's reluctance to buck century-old precedent.

Similarly, Garcia believes that his attorneys failed him by omitting certain arguments on the validity of the search warrant when they pursued the suppression motions. However, the record shows that those issues were thoroughly litigated, with some success falling to Garcia. No defective performance can be found there.

Garcia also contends that the lawyer at his second trial, Robert Dunn, was unprepared because he did not read the transcripts from the first trial, and he did not challenge certain government misconduct amounting to mischaracterizing evidence and vouching for witnesses. On the first point, Mr. Dunn has filed an affidavit asserting that he did in fact prepare and insisting that Garcia's charges against him are "a total fabrication." He also details his investigative efforts. The petitioner does nothing to refute those assertions. And the trial record bears them out. The same holds true for Mr. Dunn's trial conduct. The petitioner has not pointed to any specific instance of witness vouching by the government or a mischaracterization of the evidence. As it stands, the petitioner's arguments on that score remain as an unsupported and empty claim.

Finally, the petitioner accuses Mr. Dunn of holding back in attempting to negotiate a guilty plea. Many times, disputes between lawyer and client over plea negotiations amount to finger-pointing that requires testimony to resolve. Not so here. As the Sixth Circuit explained, no hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting

*Fontaine v. United States*, 411 U.S. 213, 215 (1973)). *See also Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (holding that "evidentiary hearings are not required when . . . the record conclusively shows that the petitioner is entitled to no relief."). Moreover, "when the trial judge also hears the collateral proceedings . . . that judge may rely on his recollections of the trial in ruling on the collateral attack." *Blanton*, 94 F.3d at 235 (citing *Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977)).

In this case, Mr. Dunn averred that he was engaged in extensive plea negotiations with the government, but he and the petitioner were not able to come to terms. The contemporaneous correspondence attached to the government's response in this case backs him up. And then, of course, there is the record, which memorializes a colloquy on September 26, 2002 the Court had with the petitioner about his plea negotiations:

> The Court: All right. Well, let's dispose of one item first. Have you and the government been engaged in discussions with respect to a guilty plea?
>
> Mr. Dunn: We have, your honor, even though Mr. Garcia indicated to me that he was not inclined — at least recently had indicated to me — that he was not inclined to enter a plea. The government did tender a plea and I did give that to Mr. Garcia.
> . . .
> The Court: Let me make inquiry. Mr. Garcia, you and Mr. Dunn have discussed, have you not, the government's plea offer?
>
> Respondent: Yes, we have, sir.
>
> The Court: Has the government tendered an actual Rule 11 agreement to you?
>
> Respondent: Yes, your honor, they did, on the twenty-fourth; I think I received it yesterday, the twenty-fifth.
>
> The Court: Have you had sufficient time to talk with Mr. Dunn about the plea offer?
>
> Respondent: Yes, I have discussed this plea for the previous two weeks.
> . . .

> The Court: . . . And I want to just make sure, ensure for the record, that you have had a chance to review that plea agreement, and that you have rejected it, and it's your choice to go to trial; is that a fair statement, sir?
>
> Respondent: Yes, your honor, let the record reflect, that is a fair statement.

R. 1041. Tr. at 3-5.

The Court concludes that none of the instances raised by the petitioner demonstrate deficient performance by any of his seven lawyers. He has not suffered a violation of his Sixth Amendment rights.

### III.

This case has been around a long time. As the government observed in its response to the current motion, "To date, Garcia's case has entailed appearances by seven different defense attorneys (some more than once), an untold number of motions and hearings, two multi-week jury trials, the attention of three different U.S. District Court judges, multiple appeals to the U.S. Court of Appeals for the Sixth Circuit, and consideration by the U.S. Supreme Court of Garcia's petition for certiorari." Resp. to Mot. to Vacate Sentence at 19. Of course, none of that necessarily precludes the possibility that the petitioner's constitutional rights were violated. On the other hand, his lawyers did enjoy some measure of success in the face of the strong evidence against him, they performed admirably and skillfully by all accounts (except the petitioner's), and by their efforts Garcia was extricated from a life sentence in the process. Garcia enjoyed the effective assistance of competent counsel.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate his sentence [dkt. #1068] is **DENIED**.

It is further **ORDERED** that the petitioner's motion for an evidentiary hearing and to appoint counsel [dkt. #1084] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: October 31, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 31, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL
